Case for argument, United States v. Haynes. Mr. Henderson. Good morning. May it please the court. We had a few concerns and important highlights that we wanted to point out to the district judge before Mr. Haynes' sentencing. Primarily, Mr. Haynes had accepted responsibility, he had engaged in rehabilitation, and a sentence of approximately 72 months would fit in with nationwide averages and the co-defendants in his case. We all felt those were primary reasons to reach such a sentence. One of the reasons why I chose to do that is you do see, at least in my experience, some difference between sentences in different districts in the circuit and nationwide. And so the reason why we cited to those statistics, in our courthouse, 10 years for a drug crime is probably one of the lower sentences you'll see, whereas just earlier today we had a 40-month sentence on a guideline range that was similar to this. And so I tried to direct the district court's attention to that, and we felt after the hearing that there was a little bit of confusion about that. There's a little bit of confusion about one of our primary arguments as to why the guidelines were higher than they really should have been in this case with regard to the treatment of pseudofedrin versus methamphetamine. It's a counterintuitive calculation where pseudofedrin, which is the precursor ingredient to make methamphetamine, is treated as more serious than methamphetamine itself. So we were a bit dissatisfied with the brevity of the court's comments there. The other concern that we had and that we've highlighted in this court is that the district court did give great credence to our argument that rehabilitation was a significant factor in this case. Mr. Haynes was a first-time offender. He had obtained his GED. He had engaged in classes while he was in the Bureau of Prisons. He made significant strides. He was a different person at that resentencing hearing than he had been at his arraignment. And the district court made comments that seemed to suggest that he felt constrained a bit by this idea of retribution, which is certainly an acceptable rationale. But we were concerned that the district court felt that he had to. He was bound by some sort of Reagan administration emphasis on retribution rather than rehabilitation. Isn't that just a statement of the judge's interpretation of the historical trajectory of sentencing policy rather than a statement that he felt constrained by some law? I think he clearly understood his discretion because he undercut the guideline sentence significantly. Right. The concern that we had was that I think the judge felt that he had to give some weight to all of these factors under 3553A in terms of even if he felt that rehabilitation really outweighed everything else, well, given the change in the law, he has to increase that sentence. And because he called the sentence harsh, he called the sentence stiff, the court could interpret that a different way, but typically harsh means that a sentence is greater than necessary, which contravenes the purpose of 3553A. So those are our concerns. Excuse me. I want to say one thing. Did this state start out with Judge McCluskey? It did. And then he made some strange comments about the location of a black person being in that part of the state or something. Right. And coming from Chicago, he was. . . Now what happened between him and his being transferred, turned over to, what was the judge? Judge Baker. Baker, yeah. Yeah. And Judge Baker, we got back into that, had sentenced somebody for 16 years or something? Right. Well, because he's our senior judge. Yeah, right. Judge McCluskey had done all the. . . I think we saw that before in another case, didn't we? In Mr. Lockwood's case, right. Okay. And that's the thing is the last time he did these sentencings was back pre-Booker, was back in a different sort of time. So those are the concerns that we have for the court. Unless the court has further questions, we'd rely on our briefs. Okay. Thank you. Thank you, Mr. Anderson. Ms. Pearson? Good morning, Your Honors. May it please the Court, Mr. Henderson. My name is Ellie Pearson, and it is my honor and privilege to represent the United States. This court should affirm the district court's judgment in this case because the record is clear that the district court did not feel obligated to give greater weight to retribution than any other factor. If anything, the Gloucester court all but rejected retribution and heavily weighted rehabilitation. From the very beginning of the sentencing hearing, the court can see in the record on page 3, he says, Ms. Pearson, do you really object to the objections? He's gotten his GED. He has an inclination towards rehabilitation. That is the first of a series of statements that the court makes. The court acknowledges, he says on page 5, 3553E means I have discretion. I don't have to do what you people suggest. I have discretion, he says again. And defense counsel agrees. He encourages the district court to sentence on his discretion and put aside what the book says. The court then calls the guidelines draconian. He says I'm coming down because here's an opportunity to rehabilitate a guy. That's on page 24. And he weighs rehabilitation against the offense conduct and the defendant's role in the offense and the nature and circumstances as the district court is directed to do. You see that weighing of all of those factors in the sentencing transcript. Yes, he says this is a stiff sentence. This is not a light sentence. He says that on page 30 of the transcript. He says you are no angel, and this is a terrible drug conspiracy. But he also says on page 31, I don't mean to denigrate the offense. Even back on page 9, he says I understand the seriousness of the offense. I wouldn't downplay it one bit. And the government respectfully disagrees with the defense's definition of the word harsh. The defense in this case tries to parse the district court's words, and I don't think that's very helpful to this court to dissect each of the words individually and try and do an interpretation. Instead of looking at the transcript as a whole and understanding the context of the entire sentencing hearing, to say that the word harsh, taken out of context on page 23, makes this show that the court did not have its discretion. That word is sandwiched in between on page 22 the district court saying the guidelines are draconian, and then again on page 24 the court says he's coming down because he recognizes an opportunity to rehabilitate the defendant. The defense argues that harsh means something that's greater than necessary, and the government disagrees. The definition that he cites in his reply brief actually parses that definition out. The most common definition by the website, Merriam-Webster website the defense cites, is actually an unpleasant or difficult experience. And the government agrees. Ten years is not a light sentence. It's a stiff sentence, and it's an unpleasant experience. But instead the defense cherry-picks the second and third definition to support his position. As to the second argument, whether or not the court addressed principle arguments in mitigation, the government would argue that those were not principle arguments presented by the defense. The defense gave the court, the sentencing court, mixed signals. From the very beginning of the sentencing hearing on page 6, the defense attorney says, Judge, I don't want you to make technical sentencing guideline calculations. Put the book aside and sentence on your discretion under 3553A. He says that on page 6 he withdraws his objections to the guidelines and doesn't really address any of those issues and asks the court, seizing on the opportunity, because the judge has already indicated that he is inclined to sentence the defendant based on his inclination towards rehabilitation. He makes these two arguments regarding comparing the defendant to the national averages, but that comparison argument really has no weight, and so that's why we called the error, if it was an error, harmless. We stand by that position in our brief because if that comparison to the national average is an apt comparison and the court ignored it, perhaps that would be an issue. But it's not. The statistics that the defense imposes or proposes to the court is all of the drug offenses nationwide, 5,383 of them, all from simple possession to continuing criminal enterprise. It doesn't account for the weight. It doesn't account for criminal history. It doesn't account for role in the offense. It doesn't account for a government-sponsored departure. So it's not an apt comparison. And in Warner, this court has said that's the only thing that is forbidden by 3553A.6. So unless the court has any other questions for me, we stand on our brief. Thank you. Okay, thank you very much, Mr. Pearson. Mr. Henderson, do you have anything further? Just briefly, I do think the statistics are important. We went from very general, all first-time drug traffickers, and all drug traffickers, in fact, to more specific, meth cases in particular, cases that involve methamphetamine. All of those numbers are significantly below 120 months. It's not that this sentence is unreasonable because 3553A.6 says it has to be with those averages. It's that we thought that was a compelling argument to make to the judge, and we were dissatisfied with the judge's response to that. We felt that he hadn't considered that. Apart from that, again, we've listed our concerns. We are just concerned that the judge felt that he was overly constrained under 3553A, perhaps because of the 16 years that have elapsed since he last was doing criminal sentences. Well, wait a second. The 15 years that elapsed, there's a first time for every judge, right? So he hasn't sentenced anyone in 15 years. But a newly appointed judge who sentences the first defendant he has, the first criminal trial, he has never sentenced a person before in his lifetime. So are you suggesting that maybe first sentences ought to not count? No, no, no. No, I'm not suggesting that at all. A person who sentences someone for the first time is less experienced than Judge Baker. And Judge Baker was appointed before the sentencing reform. No, no, but you're attributing some of the sentencing conduct that you don't like to the fact that he's rusty. I'm not really saying that. I'm not. I'll withdraw that comment. What I would say, though, is that we were confused coming out of the sentencing hearing, because as Ms. Pearson said, we felt that the district court did accept our arguments and yet still felt compelled to impose what it considered a harsh and stiff sentence. And so in trying to explain that confusion, we look at the record and the arguments that we've raised on appeal we think are compelling enough to remand it to ensure that the judge can use his discretion. Okay. Well, thank you very much to both counsel.